IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**JACQUES GILMORE**, *on behalf of himself and others similarly situated*,

Plaintiff,

Case No. 2:21-cv-2661

**AIMBRIDGE HOSPITALITY, LLC**
*a Delaware limited liability company*, and
**AH 2007 MANAGEMENT, LP**,
*a Delaware limited partnership*

**JURY DEMANDED**

Defendants.

**MEMORANDUM IN SUPPORT OF MOTION FOR FLSA CONDITIONAL CERTIFICATION**

## I.  INTRODUCTION

This is a case about unpaid wages. Named Representative Plaintiff Jacques Gilmore ("Plaintiff") brought this action on behalf of himself and for other misclassified "Chief Engineer" employees. Plaintiff and putative class members were (or are) employed by Defendants Aimbridge Hospitality, LLC and/or AH 2007 Management, LP,[1] (collectively "Defendants" or "Aimbridge") during the last three (3) years (collectively "the putative class"). Plaintiff claims that Defendants

---

[1] Upon information and belief, AH 2007 Management, LP is a related entity to Aimbridge Hospitality, LLC. Plaintiff's counsel believes that there are other similar entities which exist in different geographic regions. Plaintiff's counsel maintains each is a joint employer with Aimbridge Hospitality, LLC. *See* Second Amended Complaint (ECF No. 25) at ¶ 26. Plaintiff will move to name these entities if this Motion is granted. Plaintiff will seek to amend for each entity, other than Aimbridge Hospitality, LLC and/or AH 2007 Management, LP, that paid each putative class member who joins.

1

violated the Fair Labors Standards Act ("FLSA"), 29 U.S.C. 201 *et. seq.*, by misclassifying him and the putative class as exempt from the FLSA's overtime provisions. Plaintiff seeks to recover all overtime pay due to him and the putative class as a result of these violations.

In this Motion, Plaintiff requests an Order: (1) authorizing Plaintiff's overtime claims to proceed as a FLSA collective action on behalf himself and other similarly situated "Chief Engineer" employees; (2) directing Defendants to immediately provide Plaintiff's counsel a computer-readable file containing the names (last names first), last known physical addresses, last known email addresses, social security numbers,[2] dates of employment, and last known telephone numbers of all putative class members; (3) providing that the Court-approved notice be posted at all of Defendants' facilities where they currently employ anyone who falls within the scope of the putative class, enclosed with all of Defendants' currently employed putative class members' next regularly-scheduled paycheck/stub, and be mailed and emailed to the putative class; (4) tolling the statute of limitations for the putative class as of the date this is fully briefed; and (5) requiring that the Opt-in Plaintiffs' Consent to Join Forms be deemed "filed" on the date they are postmarked.

## II.     STANDARD OF REVIEW

Under the FLSA, employees may seek redress "for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This is the FLSA's "collective action" provision. Each "similarly situated" employee must "give his consent in writing to become such a party and such consent [must be] filed in the court in which such action is brought." *Id.* Once the consent is filed, the individual becomes a "party plaintiff" to the collective action. *Id.*

---

[2] Plaintiffs seek the social security numbers in order to perform skip-traces on any individual that has a consent form returned as undeliverable.

The standard for collective action notice "is a 'lenient one.'" *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995). It is considerably "less stringent than that for joinder under Rule 20(a) . . .[or] [Rule 23(b)(3)] that common questions 'predominate.'" *Grayson v Kmart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996), *cert. denied*, 117 S. Ct. 435 (1996). *See also Canaday v. Anthem Cos.*, 441 F. Supp. 3d 644, 647 (W.D. Tenn. 2020) (citation omitted) (" . . . an FLSA collective action is not subject to the numerosity, commonality, typicality, and representativeness requirements of a traditional Rule 23 class action.").

To serve the "broad remedial purpose" of the FLSA, courts are afforded the power to give notice to other potential class members to "opt-in" to a plaintiff's case. *See Dybach v. Florida Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991); *see also Hoffman-LaRoche v Sperling*, 493 U.S. 165, 170 (1989) ("[a] collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources"). Proceeding as a collective action also serves the goal of "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffman-LaRoche*, 493 U.S. at 170).

Early court-authorized notice also protects against "misleading communications" by the parties, prevents the proliferation of multiple individual lawsuits, assures joinder of additional parties is accomplished, and expedites resolution of the dispute. *Id.* at 170-72; *see also Yates v. Wal-Mart Stores, Inc.*, 58 F. Supp. 2d 1217, 1218 (D. Colo. 1999) ("judicial efficiency demands: consolidation of individual overtime claims in a collective action"). Prompt notice also serves the critical function of advising potential claimants to file their consent before their claims become time-barred. *See, e.g., Stransky v. HealthOne of Denver, Inc.*, 868 F. Supp. 2d 1178, 1182 (D. Colo. 2012) (tolling the FLSA's statute of limitations for potential opt-in plaintiffs from the date of plaintiffs' motion for judicial notice until 90 days after such notice is received).

This case is no exception. Notice should issue to the putative class.

## III.   FACTUAL BACKGROUND

Plaintiff was employed by Defendants as a misclassified "Chief Engineer" throughout the last three (3) years.[3] Plaintiff maintains he and other "Chief Engineers" were wrongfully classified as exempt from the FLSA's overtime provisions and were denied all overtime wages lawfully due. Mr. Gilmore himself worked at Defendants' Hampton Inn/Homewood Suites hotels located in Memphis, Tennessee in the "Southwind" area.[4] Defendants, on the other hand, comprise one of the largest hotel management companies in the United States.[5] According to Defendant Aimbridge Hospitality, LLC's website, "Aimbridge Hospitality today is a leading, global hospitality company offering best-in-class hotel management services across a broad spectrum of franchised branded full service, select service, luxury hotels, destination resorts, convention centers and lifestyle hotels. Aimbridge's premium portfolio represents over 1,500 properties in 50 states and 23 countries."[6]

As the above description explains, Defendants' business centers on hotel-management services. Part of the services they provide include basic property cleaning and maintenance. This is precisely what they employed Plaintiff and other "Chief Engineers" to do.[7] However, rather than

---

[3] *See generally* Second Amended Complaint (ECF No. 25).

[4] Declaration of Jacques Gilmore ("Gilmore Decl."), attached as *Exhibit A*, at ¶ 1.

[5] *Id.* at ¶ 15.

[6] https://aimbridgehospitality.com/history-and-milestones/ (last visited March 28, 2022).

[7] Second Amended Complaint (ECF No. 25) at ¶ 18.

4

pay Plaintiff and the putative class on an hourly-basis, Defendants created the misleading job title of "Chief Engineer" and paid them on a salary basis.[8]

Defendants' own job-postings confirm that this occurred on a national scale. Attached as *Exhibit B* is Gilmore v. Aimbridge Hospitality, LLC – Plaintiff's Bates No. 000013-000090. These documents are current or former online job-postings for "Chief Engineers" for Defendants' locations in: South Bend; Indiana; Amesbury, Massachusetts; South Padre, Texas; Austin, Texas; Tulsa, Oklahoma; Baltimore, Maryland; Boca Raton, Florida; Boston, Massachusetts; Charlotte, North Carolina; Chicago, Illinois; College Station, Texas; Washington, D.C.; Frederick, Maryland; Hilo Bay, Hawaii; Houston, Texas; Lancaster, Pennsylvania; Louisville, Kentucky; Memphis, Tennessee; Mishawaka, Indiana; Nashville, Tennessee; New York City, New York; Pasadena, California; Pecos, Texas; Raleigh, North Carolina; Richmond, Virginia; San Antonio, Texas; San Diego, California; San Francisco, California; Sedona, Arizona.

These are postings *Defendants created and/or hosted*.[9] As discussed more fully below, these postings shows that Plaintiff and the putative class are similarly situated. *See supra* at 10-11; *Goudie v. Cable Communs., Inc.*, No. 08-507-AC, 2008 U.S. Dist. LEXIS 125446, at \*22 (D. Or. Aug. 20, 2008) (*report and recommendation adopted* at No. 08-CV-507-AC, 2008 U.S. Dist. LEXIS 83382, at \*6 (D. Or. Oct. 14, 2008)). This is more than sufficient to warrant notice. *See e.g.*, *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996) ("Some courts hold that a plaintiff can demonstrate that potential class members are "similarly situated," for purposes of receiving notice, based solely upon allegations in a complaint of class-wide illegal practices.")

---

[8] *Id.* at ¶¶ 17-25.

[9] *Ex. B.* at Plaintiff's Bates No.000038-40. All of items in this Exhibit were posted on the same site.

5

(citing *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 442–45 (N.D. Ill. 1982)). Therefore, court-supervised notice under 216(b) of the FLSA is appropriate and necessary.

### IV.     ARGUMENT

#### a. The FLSA's Lenient Notice-Stage Standard Applies to this Motion.

An employee need only show that she is suing her employer for herself and on behalf of other employees "similarly situated" to warrant FLSA collective action treatment. *Grayson*, 79 F.3d at 1096. The "similarly situated" standard is met where the class members share similar job requirements and pay provisions. *Archer v. Nabors Truck Serv.*, No. 16-cv-02610-JTF-tmp, 2018 U.S. Dist. LEXIS 221008, at *12 (W.D. Tenn. Oct. 12, 2018) (*report and recommendation adopted at 2019 U.S. Dist. LEXIS 81282, W.D. Tenn., Mar. 15, 2019*)) (citing *Saddler v. Memphis City Schs*, No. 12-CV-2232-JTF-tmp, 2013 U.S. Dist. LEXIS 45479, at *3 (W.D. Tenn. Feb. 4, 2013)).

District Courts within the Sixth Circuit employ a two-stage certification procedure for FLSA collective actions. At the first stage, known as conditional certification, the court determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class. *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 767 (N.D. Ohio 2015) ("At the first step, the plaintiff bears the burden of showing that the employees in the class are 'similarly situated' . . . the plaintiff must only 'make a modest factual showing' that is he similarly situated to the other employees he is seeking to notify.")

The burden of showing plaintiffs and potential opt-ins are "similarly situated" is met at the notice stage through detailed allegations in a complaint and supporting declarations. *See Burgess v. Wesley Fin. Grp.*, LLC, No. 3:16-cv-1655, 2017 U.S. Dist. LEXIS 37942, at *9 (M.D. Tenn. Mar. 16, 2017); *see also Waggoner v*, 110 F. Supp. 3d at 767 (concluding that declarations demonstrating that potential class members had the same primary duties and were subjected to the

same payment practices, offered as "evidence of a company-wide plan of misclassification of [employees] . . . as exempt from overtime requirements," is sufficient to satisfy the "modest" burden for conditional certification). *Any evidence* of a common FLSA violations can warrant conditional certification, however, including job postings. *See Goudie*, No. 08-507-AC, 2008 U.S. Dist. LEXIS 125446, at *22 (granting conditional certification where there were no declarations, but there was evidence demonstrating the potential class members *had identical job descriptions*). Importantly, Defendants' rebuttal evidence <u>does not</u> bar § 216(b) notice.[10] This first-stage determination is made early in the litigation, prior to discovery, because "'the statute of limitations continues to run on unnamed class members' claims until'" they receive notice and return a written consent to join the collective action. *Beasley v. Custom Commc'ns, Inc*, No. 5:15-CV-583-F, 2016 WL 5468255, at *3 (E.D.N.C. Sept. 28, 2016) (quoting *Houston v. URS Corp.,* 591 F. Supp. 2d 827, 831 (E.D. Va. 2008) (citing 29 U.S.C. § 216(b)).

Once the court makes the preliminary determination that the potential plaintiffs are similarly situated, the case proceeds as a collective action throughout discovery. *See Mooney*, 54 F.3d at 1213; *Hoffman v. Sbarro*, 982 F. Supp. 249, 261-62(S.D.N.Y. 1997); *Herrera v. Unified Mgmt.*, 2000 U.S. Dist. LEXIS 12406, 6 Wage & Hour Cas.2d (BNA) 922 (N.D. Ill. 2000). Discovery is relevant after conditional certification both as to the merits of the case and for the second step in the collective action procedure where the court evaluates conflicting evidence developed in discovery to test the validity of the preliminary decision made at the notice stage. *See*

---

[10] Merits-based arguments are likewise inappropriate at the conditional certification stage. *Lacy v. Reddy Elec. Co.*, No. 3:11-cv-52, 2011 U.S. Dist. LEXIS 142050, at *8 (S.D. Ohio Dec. 9, 2011) ("Requiring any more factual support from Plaintiff at this early stage, or weighing [Defendants'] competing factual assertions, would intrude improperly into the merits of the action, essentially imposing a burden upon Plaintiff to prove the factual predicates of his claim as a precondition to obtaining preliminary conditional certification. It is well-settled that no merits-based inquiry is appropriate at this stage.") (cleaned up).

*Mooney*, 54 F.3d at 1214. Once the notice and opt-in period is complete, the Court will have the benefit of knowing the actual makeup of the collective action. Thus, early notice will help the court to manage the case because it can "ascertain the contours of the action at the outset." *Hoffman-La Roche*, 493 U.S. at 172-73.

      b. The *O'Brien* Case.

In August of 2009, the Sixth Circuit handed down the seminal case on FLSA collective actions. *See O'Brien v. Ed. Donnelly Enterprises, Inc.*, 575 F.3d 567 (6th Cir. 2009). In *O'Brien*, the plaintiffs brought two theories under the FLSA. First, they claimed they were required to work "off the clock." Second, they claimed the defendants had electronically edited their time records. *Id.* at 573. In addressing the "decertification" standard, which is markedly more stringent than the phase one conditional certification and notice standard, the Sixth Circuit explained how lenient the FLSA collective action procedures are. The Sixth Circuit rejected many of the arguments routinely advanced by the defendants opposing collective action status. The Sixth Circuit stated that "showing a 'unified policy' of violations is *not* required." *Id.* at 584 (emphasis added).

Likewise, the Sixth Circuit expressly stated that the need for individualized assessments of opt in plaintiffs does not defeat collective action status. The *O'Brien* court explained:

> Both the district court and the defendant note that to determine whether a particular violation took place in this case requires an individualized analysis that examines the facts of each alleged violation. For this reason, the district court decertified, determining that individualized issues predominated. Under the FLSA, opt-in plaintiffs only need to be "similarly situated." While Congress could have imported the more stringent criteria for class certification under Fed. R. Civ. P. 23, it has not done so. The district court implicitly and improperly applied a Rule 23-type analysis when it reasoned that the plaintiffs were not similarly situated because individualized questions predominated.

*Id.* at 584-85 (internal citations omitted). *O'Brien* also addressed what proof is necessary to proceed as a collective action. In *O'Brien*, the plaintiff suggested the following standard: a collective action is proper where the "causes of action under the FLSA accrued at about the time

8

and place in the approximate same manner of the named plaintiff would be similarly situated' to the lead plaintiffs." *Id.* at 585. The court rejected this on the ground that this standard, suggested by the plaintiff, *was too restrictive* and "more demanding that what the statute requires." *Id.* Instead, the Sixth Circuit held:

> But in this case, the plaintiffs were similarly situated, because their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct. The claims were unified so, because plaintiffs articulated two common means by which they were allegedly cheated: forcing employees to work off the clock and improperly editing time sheets.

*Id.* at 585. Accordingly, the Sixth Circuit held that collective action status is proper where "claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* The court explained the rationale for this very lenient standard:

> "[T]he collective action serves an important remedial purpose. Through it, a plaintiff who has suffered only a small monetary harm can join a larger pool of similarly situated plaintiffs. That pool can attract effective counsel who knows that if the plaintiffs prevail, counsel is entitled to a statutorily required reasonable fee as determined by the court."

*Id.* at 586 (citing *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). Court supervised notice is granted very liberally in virtually all jurisdictions. In the *O'Brien* case, the Sixth Circuit has perhaps made this the most lenient jurisdiction for collective actions.

As shown below, Plaintiff has gone far beyond this minimal preliminary showing. He provided detailed allegations in the Second Amended Complaint, his Declaration, and nation-wide job descriptions/postings. These allegations highlight a near uniform set of employment circumstances. Court-supervised notice under 216(b) of the FLSA is, thus, appropriate and necessary.

      c. <u>Plaintiff's Evidence Easily Meets the Lenient, Threshold Conditional Certification Standard.</u>

Mr. Gilmore demonstrated that he and other "Chief Engineers" were together the victims of Defendants' single decision, policy, or practice misclassification. In fact, the evidence shows that Plaintiff and putative class members held the *exact same job position*. As noted above, Plaintiff has provided evidence *from thirty (30) other locations* showing that Defendants' "Chief Engineer" position is the same no matter where any given person worked.[11] These job descriptions and requirements are the same coast to coast, from California to Massachusetts, and even Hawaii.[12] Mr. Gilmore's Declaration helps fill in the gaps that these postings leave out, however. He has attested that "[a]s Chief Engineer [his] job duties involved tasks such as carpeting cleaning, maintenance work, like repairing appliances, dealing with bed bugs, general groundskeeping (i.e., picking up trash), and other similar tasks."[13] These are, of course, in no way the job responsibilities of an overtime exempt, salaried manager. *See Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 109 (E.D.N.Y. 2020) (". . . whether an employees 'primary duty' is managerial 'should be resolved by examining the employees' actual job characteristics and duties.'").

Nonetheless, Plaintiff anticipates that Defendants will argue that this evidence does not show a nationwide practice of misclassification. The *Goudie* decision, cited above, is instructive here. In that case the plaintiffs did not have any declarations from putative class members to support their motion for conditional certification. *Id.* at *19-20. Indeed, the defendant there argued that conditional certification was inappropriate "by point[ing] to the absence of affidavits or other

---

[11] *Infra* at 5. *See generally Ex. B*.

[12] *Ex. B.* at Plaintiff's Bates No.000013, 15, and 45.

[13] *Ex. A* at ¶ 4.

evidence from potential collective members indicating their desire to join this action." *Id.* at *20. The plaintiff did, however, "attach[] examples from [defendant's] website where jobs posted in different states link to the same web page, and thus have identical descriptions in each state." *Id.* at *15. The *Goudie* court explained that "[t]here seems little doubt that a significant degree of commonality exists between [p]laintiffs and their fellow technicians, as [p]laintiffs' evidence shows that both the job title and job description are identical for all technicians regardless of their geographic location. *Id.* at *16. Conditional certification was granted accordingly. *Id.* at *26-27.

The *Goudie* decision is directly on point here. Plaintiff has provided evidence *from thirty (30) other locations* showing that Defendants' "Chief Engineer" position is the same no matter where any given person worked.  Just like in *Goudie*, these job postings show that the job title and job description are identical. As such, Plaintiff urges this Court to follow the reasoning of Goudie and order notice of this matter sent to a conditional class. *See also Murray v. Transp. Media, Inc.*, No. 3:19-cv-00180-JR, 2019 U.S. Dist. LEXIS 113754, at *5 (D. Or. May 7, 2019 (*report and recommendation adopted* at 2019 U.S. Dist. LEXIS 112992 (D. Or., July 8, 2019)) (handbook can be basis for conditional certification).

    d. <u>The Proposed Notice and Consent Forms are Fair and Adequate.</u>

A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche,* 493 U.S. at 170.  Distribution of a Court-approved notice is part-and-parcel of conditional certification. *See Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 765 (W.D. Tenn. 2011).

Plaintiff's Proposed Notice is attached as *Exhibit C*. Plaintiff's Proposed Consent is attached as *Exhibit D*.  These documents are similar in form and content to the Notice and Consent

11

forms previously approved by in this District. *See Warmack et. al. v. Flight Memphis, LLC et. al.*, 2:21-cv-02431-TLP-atc, attached as *Appendix 1*.

Plaintiff's proposed forms are "timely, accurate, and informative" as required. *Hoffman-LaRoche*, 493 U.S. at 172. The Notice provides information about the pendency of the action and of the opportunity to opt-in. Plaintiff's legal claims are accurately described. Potential opt-in plaintiffs are advised that Defendants are defending against the claims and that they are not required to participate. The Notice provides clear instructions on how to opt-in and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action. *See* 29 U.S.C. § 215(a)(3). Overall, the proposed Notice is easy to read, written in plain English, and informs potential class members of their rights and how they can elect to participate in action. The Notice also describes the legal effect of joining the suit; describes the legal effect of not joining the suit; notes that the Court expresses no opinion regard the merits of Plaintiff's claims or Defendants' liability, and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action. *See* 29 U.S.C. § 215(a)(3) (anti-retaliation provision).

Plaintiff proposes that the Notice and Consent forms be emailed and mailed by counsel for Plaintiff to all putative class members. *See Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012) ("With regard to the use of email to notify potential plaintiffs of this litigation, 'communication through email is [now] the norm.'") (citing *In re Deloitte & Touche, LLP Overtime Litig.*, 2012 U.S. Dist. LEXIS 12641, 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012)).

Individuals interested in participating would be required to file their consents with the Court within sixty (60) days of such mailing. This is consistent with established practice under the FLSA. *See, e.g.*, *McCloud v. McClinton Energy Group, LLC*, 2015 U.S. Dist. LEXIS 20374, 2015 WL 737024, at *10 (W.D. Tex. Feb. 20, 2015) ("[M]ost courts appear to default to a notice

period of 60 days.")

Since the statute of limitations is daily destroying the ability of the putative class to recover unpaid wages, Plaintiff also requests that Defendants be ordered to internally post the notice prominently on any time clocks or computers used by putative class members (or alternatively on the bulletin boards where job notices are posted). *See, e.g.*, *Spencer v. Macado's, Inc.*, No. 6:18-cv-00005, 2019 U.S. Dist. LEXIS 167312, at *15 (W.D. Va. Sep. 27, 2019) (Defendant "shall post notice approved by this Court to putative class members at all [Defendant's restaurant] locations, [and] enclose such notices in paystubs."); *Cranney v. Carriage Servs., Inc.*, No. 2:07CV1587 PLHPAL, 2008 WL 608639, at *5 (D. Nev. Feb. 29, 2008) (ordering notice to be posted in defendants' locations, e-mailed to employees, publicized in employee newsletter as well as mailed to employees). Plaintiffs also request that notices be included with all Defendant's current hourly-paid tipped employees' next regularly-scheduled paycheck or stub after approving conditional certification. *See Johnson v. ECT Contracting, LLC,* No. 3:09-0130, 2010 WL 625390, (M.D. Tenn. Feb. 18, 2010).

In sum, the proposed Notice and Consent forms are fair, accurate and should be approved for distribution. Plaintiff requests that the notices be deemed "filed" on the date they are postmarked so that prospective class members will not have their statute of limitations run while the Consent Forms are being mailed.

e. Equitable Tolling is Appropriate.

Plaintiff further requests that (a) the notices be deemed "filed" on the date they are postmarked and; (b) the statute of limitations be tolled as of the date this motion is fully briefed. This relief is necessary so that prospective class members will not have their statute of limitations run during the notice period.

"The FLSA's statute of limitations is subject to equitable tolling." *Davis v. Kohler Co.*, No. 2:15-cv-01263, 2017 WL 3865656, at *7 (W.D. Tenn. Aug. 30, 2017). "[D]elays during the collective-action certification process constitute 'extraordinary circumstances' beyond plaintiffs' control, making them appropriate for the application of equitable tolling." *Kutzback v. LMS Intellibound*, LLC, 233 F. Supp. 3d 623, 631 (W.D. Tenn. 2017); *See also Penley v. NPC Int'l, Inc.*, 206 F. Supp. 3d 1341, 1351 (W.D. Tenn. 2016) ("[T]he Plaintiffs' claims will be tolled as of the date that the first motion for conditional certification could have been fully briefed under the scheduling order in place at the time[.]"); *Thompson v. Direct Gen. Consumer Prods., Inc.*, No. 3:12-cv-1093, 2014 WL 884494, at *8 (M.D. Tenn. Mar. 5, 2014) (tolling the statute of limitations as of the date the plaintiffs replied to the defendant's response in opposition of plaintiffs' motion for conditional certification).

For these reasons, each opt-in plaintiffs' consent form should be deemed filed on the date it is postmarked, and the claims should be equitably tolled. *See Davis*, 2017 WL 3865656, at *7 ("[E]ach opt-in Plaintiff's consent form shall be deemed 'filed' on the date the form is postmarked.").

## V.     CONCLUSION

For the foregoing reasons, this Honorable Court should grant this motion to: (1) authorize this case to proceed as a collective action; (2) issue an Order directing Defendants to immediately provide Plaintiff's counsel a computer-readable file containing the names (last names first), last known physical addresses, last known email addresses, dates of employment, social security numbers and last known telephone numbers of all putative class members; (3) issue an Order that notice be posted at all of the hotel facilities where Defendants employ "Chief Engineers", enclosed with all currently employed putative class member's next regularly-scheduled paycheck or stub,

and be mailed and e-mailed; (4) issue an Order tolling the statute of limitations for the putative class as of the date this motion is granted; and (5) issue an Order that the Opt-in Plaintiffs' Consent Forms be deemed "filed" on the date they are postmarked.

                                                Respectfully Submitted,

                                                */s/ Robert E. Morelli, III*
                                                J. Russ Bryant (TN BPR #33830)
                                                Robert E. Turner, IV (TN BPR #35364)
                                                Robert E. Morelli, III (TN BPR #037004)
                                                **JACKSON SHIELDS YEISER HOLT OWEN & BRYANT**
                                                Attorneys at Law
                                                262 German Oak Drive
                                                Memphis, Tennessee 38018
                                                Tel: (901) 754-8001
                                                Fax: (901) 759-1745
                                                *rbryant@jsyc.com*
                                                *rturner@jsyc.com*
                                                *rmorelli@jsyc.com*

                                                Attorneys for Plaintiff

## **CERTIFICATE OF CONSULTATION**

      I, Robert E. Morelli, III, counsel for Plaintiffs, hereby give notice that I conferred with counsel for Defendants, pursuant to Local Rule 7.2(a)(1)(B) in an effort to reach an agreement on the herein requested relief. M. Kimberly Hodges, counsel for Aimbridge Hospitality, LLC, indicated that the relief requested in this Motion is opposed. Counsel for AH 2007 Management, LP has yet to enter an appearance, and the undersigned counsel is not aware of who is representing them.

                                                               */s/ Robert E. Morelli, III*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 31, 2022 I caused the forgoing to be filed via the Court's electronic case filing system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

                                                               *s/Robert E. Morelli, III*